IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MOHAMMED F. AFRIDI, M.D., et al.,

                      Plaintiff,                Case No. 3:03 CV 7663

    -vs-

                                              <u>MEMORANDUM OPINION</u>

NATIONAL CITY BANK, et al.,

                      Defendant.

KATZ, J.

This matter is before the Court on Plaintiff Mohammad Afridi, M.D.'s motion for summary judgment (Doc. 125) and Defendant National City Bank's motions for summary judgment (Doc. 126) and dismissal (Doc. 145). Both parties have responded and replied to the merits of the case in several memoranda of law (Doc. 128, 138-141, 153, 147, and 148). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Plaintiff, a Toledo surgeon, was at all relevant times a partner in a practice group that established retirement plans for its partners and employees who chose to participate. Plaintiff's company contracted with Defendant to serve as administrator and trustee of the plans. Plaintiff was enrolled both in a corporate plan with other partners and employees, and in a personal plan in which Plaintiff was the sole participant. Sometime in the early 1990's, Plaintiff elected to appoint an investment advisor to administer the money in Plaintiff's personal plan. That advisor was William Davis, and his investment company was Continental Capital ("Continental"). Throughout the ensuing years, Continental and Davis, as well as Plaintiff himself, instructed

Defendant to transfer Plaintiff's funds, which Defendant had invested in securities and mutual funds, to Continental-directed investments. Defendant tracked these transactions and provided quarterly and annual statements to Plaintiff.

Davis invested Plaintiff's funds recklessly, even illegally, and at the time of this briefing, the funds had become worthless and Davis was under a federal indictment.

**II. Standards of Review**

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a lawsuit by asserting a plaintiff's lack of standing. *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536 (6th Cir. 2004); *AFGE v. Babbitt*, 46 Fed. Appx. 254 (6th Cir. 2002). Standing is a jurisdictional issue which is determinative of the ability of the federal courts to hear, among other things, an action under the Employee Retirement Income Security Act of 1974 ("ERISA") . *See Ward v. Alternative Health Delivery Sys.*, 261 F.3d 624 (6th Cir. 2001); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 442 (6th Cir. 2006). "[C]ourts narrowly construe ERISA to permit only the parties specifically enumerated to bring suit." *COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1072, 1081 (9th Cir. 2000)).

Two categories of 12(b)(1) motions exist: facial attacks and factual attacks. In *U.S. v. Ritchie*, the Sixth Circuit panel distinguishes between the two as follows:

> A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no

2

> presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

15 F.3d 592, 598 (6th Cir. 1994) (internal quotations and citations omitted). Plaintiff has the burden of proving to the court that he has standing and thus jurisdiction is proper. *COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 880-881 (6th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

In the instant case, Defendant makes a factual attack on Plaintiff's standing. Although Plaintiff's Third Amended Complaint states he is acting on behalf of the plans regarding his claims under § 1132(a)(2), Defendant contends Plaintiff is actually seeking only individual recovery. Def.'s Memo. Supp. at 3. Thus, this Court is "free to weigh the evidence" to make a determination on standing. *See Ritchie* at 598. Should this Court determine Plaintiff lacks standing under ERISA, no federal subject matter jurisdiction will exist. *Ward* at 627.

**B. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

Under Fed. R. Civ. P. 12(b)(6), a lawsuit may be dismissed for "failure to state a claim upon which relief can be granted." To warrant dismissal, "it [must] appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true." *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007). However, it is unnecessary for the court to "accept as true legal conclusions or unwarranted factual inferences." *Kottmyer* at 688 (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

**C. Motion for Judgment on the Pleadings**

3

After the pleadings are closed, Fed. R. Civ. P. 12(c) permits any party to move for judgment on the pleadings as long as trial is not delayed as a result. A 12(c) motion employs essentially the same standard of review as a 12(b)(6) motion. *Spivey v. Ohio*, 999 F. Supp. 987, 991 (1998); *United Food & Commer. Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004). When considering a motion for judgment on the pleadings, "a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer* at 689 (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)).

**III. Discussion**

    **A. Plaintiff's claims under § 1132(a)(3)**

The Employee Retirement Income Security Act (§ 1132(a)(3)) provides a private right of action for a participant, beneficiary or fiduciary "to enjoin any act or practice which violates any provision of this title or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this title or the terms of the plan."

In this case, Plaintiff seeks restitution to the Plan of assets wrongfully conveyed without authority to a third party. Pl.'s Memo. Opp. at 5. However, not all restitution is considered equitable relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *Accord Sereboff v. Mid Atlantic Med. Servs. Inc.*, 126 S. Ct. 1869, 1874 (2006). The legal or equitable quality of a particular claim for restitution "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Knudson* at 212.

Restitution is considered legal relief "[i]n cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* (internal quotations and citations omitted). These claims are categorized as legal because the plaintiff "sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." *Id.* (citing Restatement of Restitution § 160, Comment a, pp. 641-642 (1936)).

In contrast, restitution is considered equitable relief "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*; *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002). However, where "the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor" imposing personal liability on the defendant. *Id.* at 213-214. "Thus, for restitution to lie in equity, the action generally must seek to … restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

In this case, the restitution Plaintiff seeks cannot clearly be traced to particular funds in Defendant's possession. When considering a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this Court must construe the facts contained in the complaint in favor of the Plaintiff. However, even if National City did not have the authority to allow Davis to act as Plaintiff's investment advisor, as Plaintiff alleges, the fact remains Defendant (at Plaintiff's direction) transmitted money from Plaintiff's individual Plan account to

5

Davis for investment and the money that was consequently lost is no longer in Defendant's possession. Def.'s Reply Memo. Supp. Mot. Dismiss, Doc. 148 at 6.; Pl.'s Surreply Memo. Opp., Doc. 152 at 1-2. Therefore, the relief Plaintiff seeks cannot be considered equitable because the funds were dissipated through the investments made by Davis and none of the monies invested remain in the possession of Defendant. Plaintiff's claim of restitution is thus legal relief because it imposes personal liability on Defendant for its alleged actions.

Because the restitution Plaintiff seeks is legal relief, not equitable relief as required by statute, Plaintiff has not stated a claim upon which relief can be granted. All claims arising under § 1132(a)(3) are hereby dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff's claims under § 1132(a)(2)**

29 U.S.C. § 1132(a)(2) provides a private right of action under ERISA for participants, beneficiaries, and fiduciaries seeking appropriate relief under 29 U.S.C. § 1109 for breach of fiduciary duty. § 1109 provides in pertinent part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

"Plan fiduciaries who breach any of their ERISA-imposed responsibilities, obligations, or duties may be held personally liable for damages, for restitution, and for 'such other equitable and remedial relief as the court may deem appropriate.'" *Pfahler v. National Latex Co.*, 405 F.Supp.2d 839, 843 (N.D. Ohio 2005) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993)).

In accordance with the intent of Congress, lawsuits arising under § 1132(a)(2) must be brought "in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (U.S. 1985); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997). While a lawsuit may be brought by an individual plan participant, the Sixth Circuit "has repeatedly held that … ERISA does not permit recovery by an individual who claims a breach of fiduciary duty." *Weiner* at 86. "[A] fiduciary who breaches its duties must reimburse the plan, not the individual participants." *Id.*

Defendant's motion to dismiss Plaintiff's claim of breach of fiduciary duty under § 1132(a)(2) relies on the persuasive authority of a recent decision by the U.S. District Court for the Northern District of Ohio, *Tullis v. UMB Bank*, 464 F. Supp. 2d 725 (N. D. Ohio 2006). In *Tullis*, two medical doctors brought an ERISA lawsuit against UMB Bank for several causes of action, including breach of fiduciary duty, after the investment advisor Plaintiffs appointed for their self-directed pension accounts engaged in fraudulent activities which caused Plaintiffs significant monetary losses. *Id.* at 727-728. Judge Jack Zouhary held the plaintiffs were not suing in a representative capacity under § 1132(a)(2) and did not have standing to sue as the "affected sub-class" of the pension plan because they sought "individualized compensatory damages" which would not provide relief to the Plan itself. *Id.* at 729-730.

*Tullis* can be readily distinguished from the instant case. While the premise of the two lawsuits is essentially the same – both plaintiffs suffered serious monetary losses after the appointment of investment advisors to make decisions about plaintiffs' self-directed pension accounts administered by their respective banks – the significant difference is the remedy sought. In this case, Plaintiff does not seek compensatory damages paid to him; rather, he seeks "monetary

7

payments to the Plans to make good to the Plans the losses to the Plans." Pl.'s Memo. Opp. at 5. Therefore, any money recovered by Plaintiff would go to the Plan and any possibility of subsequent litigation regarding Defendant's alleged actions would be foreclosed because Plaintiff was the only plan participant harmed and the resulting harm to the Plan would be cured.

The Sixth Circuit makes clear in *Kuper v. Iovenko* that "a subclass of Plan participants may sue for a breach of fiduciary duty." 66 F.3d 1447, 1453 (1995).

> Defendants' argument that a breach must harm the entire plan to give rise to liability under § 1109 would insulate fiduciaries who breach their duty so long as the breach does not harm all plan participants. Such a result clearly would contravene ERISA's imposition of a fiduciary duty that has been characterized as the "highest known to law."

*Id.* (internal citations and quotations omitted). In the instant case, the segment of the Plan harmed by the alleged breach of fiduciary duty encompasses only one individual. However, this does not make the alleged breach any less worthy of protection under ERISA law. One individual, if he is the only participant in the Plan injured, may still sue in a representative capacity as the affected subclass to recover funds and return them to the Plan.

Defendant attempts to rebut this argument by relying on the persuasive authority of the Fourth Circuit decision in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, a case cited by Judge Zouhary in his *Tullis* opinion. 450 F.3d 570. In *LaRue*, the court holds that an individual alleging breach of fiduciary duty in connection with losses to his retirement savings plan, and who seeks recovery of those monies to be paid back into the plan is not a "remedial interest sufficient to serve as a legitimate proxy for the plan in its entirety" pursuant to § 1132(a)(2). 450 F.3d at 574.

This Court declines to follow the Fourth Circuit's decision in *LaRue*. The Fourth Circuit panel took great care to distinguish an individual suing for recovery of his lost funds to the plan

8

from "an individual plaintiff su[ing] on behalf of the plan itself or on behalf of a class of similarly situated participants," contending that in such instances "the remedy will undoubtedly benefit the plaintiff and other participants in the plan but … not solely benefit the individual participants." *Id.*

However, such a distinction strikes this Court as somewhat arbitrary and not based on the language of ERISA. Should an individual plaintiff sue on behalf of the plan itself, it is not readily apparent how the effect on the plan as a whole is any different or would incur any greater benefit, since recovery to the plan would be paid into the plaintiff's plan account in exactly the same manner as this case. Where an individual plaintiff sues on behalf of a class of similarly situated plaintiffs, it is again unclear how the plan as a whole would incur any greater benefit, since each individual plaintiff in the class would have recovery of funds paid into his individual plan account. So long as a lawsuit arising under § 1132(a)(2) represents the entire scope of injury to the plan, the number of plaintiffs involved does not appear to be of consequence.

Plaintiff's argument that his lawsuit is representative of the Plan also finds support from the Third and Eighth Circuits and the U.S. District Court for the District of New Jersey, among others. Because Plaintiff and his fellow plan participants contributed funds to a corporate pension fund held in trust by Defendant, and that trust fund was divided into "sub-funds" within the Plan in which each individual could invest the sub-fund according to his decisions, the Plan has an interest in the losses incurred by Plaintiff and his lawsuit to recover funds to the Plan under § 1132(a)(2) should be allowed. *See Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 605 (8th Cir. 1995). "The fact that the assets at issue were earmarked or held for [an] individual Plaintiff[] does not alter the fact that they were held by the Plan." *In re Honeywell Int'l ERISA Litig.*, No.

03-1214, 2004 U.S. Dist. LEXIS 21585, *52 (D.N.J. 2004). Simply because a pension plan takes the structure of an individual account plan "does not preclude the Plan from having losses." *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 236 (3rd Cir. 2005). The concept of the "[P]lan as a whole is not synonymous with [the inclusion of] all participants of the plan." *Id.* at 240. ERISA allows suits for "any losses" to a plan, and the loss to Plaintiff here is, without question, a loss to the Plan and plead as such. *See id.* at 235-36.

Because *Kuper* makes it clear that a subclass of affected Plan participants may sue to recover funds to the Plan pursuant to § 1132(a)(2), and in this case the Plan clearly has an interest in monetary losses to Plaintiff's account, Plaintiff is suing in a representative capacity to recover funds to the Plan and this court should deny Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).

### C. Cross motions for summary judgment

Plaintiff moves for summary judgment on the basis that Defendant breached its fiduciary duty by allowing improper investment of Plaintiff's funds by Davis and Continental. Plaintiff argues that the investments were prohibited party-in-interest transactions and the investments were otherwise imprudent. Further, Plaintiff argues that Continental was never properly appointed as the investment manager. Defendant counters and argues that Plaintiff selected Davis independently and Defendant cannot be held liable for the decisions made by Continental and Davis given Plaintiff's appointment of them as his investment advisors and attorney-in-fact.

Defendant argues that Plaintiff's personal plan was not an ERISA plan because, according to Defendant, a plan that covers only an owner is not an ERISA plan. *Yates v. Hendon*, 541 U.S. 1, 21 (2004). However, the personal plan was not a separate plan from the ERISA plan that

10

covers both owners and employees. Rather, it was a subpart to that plan. "Plans covering working owners and their nonowner employees . . . fall entirely within ERISA's compass." *Id.* "'[O]nce a plan has been established, it would be anomalous to have those persons benefitting from it governed by two disparate sets of legal obligations.'" *Id*. citing *Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 449-50 (4th Cir. 1993). As a subpart of the ERISA Plan established between Defendant and Plaintiff's practice, Plaintiff's personal plan is also governed by ERISA.

Plaintiff made his own informed decision to remove discretionary investment authority from Defendant and give it to Davis. With regard to his personal funds, this was an effective transfer of authority. As to proper investments, Plaintiff would not be able to hold Defendant liable for the personal portion of his subplan, absent a showing of breach of fiduciary duty under ERISA, because he voluntarily transferred investment advising responsibility to Davis and Continental. However, even if this Court finds that, as Defendant argues, Plaintiff had properly appointed Davis as his investment advisor, and had given him full discretion to direct Defendant how to invest Plaintiff's funds (in both personal and corporate plans), making Defendant a directed rather than discretionary trustee, Plaintiff still prevails because he has shown that Defendant participated in improper investment transactions. Those transactions include the following transactions between the plan and parties in interest: $166,000 in Active Leisure, Inc.; $139,000 in ADM Document Systems, Inc.; $50,000 in Americus Communications; $61,000 in Centrum Industries; $237,500 in Continental Capital Merchant Bank; $220,000 in Continental Sports Management, LLC; and $272,500 in Eclipse, Inc.[1]

---

[1] Amounts indicated are the total amount invested by all plans in each company. Doc. 125 at 13-19.

Defendant's duty regarding the propriety of these transactions is not extinguished by Plaintiff's appointment of Davis as his investment advisor. The adoption agreement that Plaintiff signed in appointing Davis to be his investment advisor, on its face, absolved the trustee, Defendant, from liability for loss resulting from directed investments. *See* Def.'s Memo., Doc. 128 at 4-5. Defendant, as a directed trustee, still owed certain fiduciary responsibilities to Plaintiff. "Under § 403(a)(1) of the statute, the directed trustee will escape liability for his actions performed pursuant to the named fiduciary's direction if the named fiduciary's directions are 'proper' and 'in accordance with the terms of the plan' and 'not contrary to' ERISA." *In re Enron Corp. Securities, Derivatives, & ERISA Litigation*, 284 F.Supp.2d 511, 583 (S.D. Tex. 2003). "Congress did not intend to release the directed trustee from all liability where the directed trustee follows the directions of a named fiduciary, and that if it had, it would have expressly stated so." *Id.* at 584. In other words, a directed trustee is liable for investing pursuant to an instruction that it knew or should have known was not made "in accordance with the terms of the plan" or that it was "contrary to" ERISA. DOL Field Assistance Bulletin 2004-03 (Dec. 17, 2004).

Defendant claims not to have known any facts that would give rise to knowledge that any of the transactions listed above were improper. The facts, however, show the contrary. Davis had signed as Secretary-Treasurer of Active Leisure, Inc. on the stock certificates of Active Leisure, LLC held by Defendant. Perz Dep., Doc. 122, Ex. 4-5. He is also listed in the subscription agreement, as a partner in an LLC that leased space to Active Leisure, and as a holder of 10% of Active Leisure's Class B stock. Perz Dep., Ex. 36 at 27, 37 and Ex. 38 at 33-34, 41. Davis was a member and Secretary of ADM Document Systems, Inc.'s board of directors. The manager of ADM was Continental Capital Advisors, Inc., of which Davis was also a director and officer. Perz

12

Dep., Ex. 38 at 31-32. The notes from Americus Communications were signed by Davis as General Partner. Davis was also a member of the board of directors of Centrum Industries, Inc., and served as its secretary, CEO, and vice president. Perz Dep., Ex. 38 at 26. Davis was also a board member of Continental Sports, and as manager signed the notes given to NCB. Perz Dep., Ex. 9-10, 38.

A private placement memorandum regarding NCB's investments in Continental Capital Merchant Bank, LLC, lists Davis as the placement agent (his fee for which is listed as $350,000), Continental as the company manager, and Centrum, Active Leisure, Continental Sports, and ADM as the companies in which Continental Capital would invest. Perz Dep., Ex. 38 at 24-32. This memo even included a detailed "Potential Conflicts of Interest" section. *Id.*

It is clear that Defendant knew or should have known that these investments posed a conflict of interest as party-in-interest transactions. Therefore, even as a directed trustee and not a discretionary trustee, Defendant is liable for the losses suffered by the Plan from these investments.

**IV. Conclusion**

Pursuant to ERISA, 29 U.S.C. 1132(a)(2), Defendant's motion for summary judgment (Doc. 126) is hereby denied. Defendant's motion to dismiss (Doc. 145) is hereby granted in part, and denied in part, as described herein. Plaintiff's motion for summary judgment (Doc. 125) is hereby granted.

                                                  S/ *David A. Katz*
                                                  DAVID A. KATZ
                                                  U. S. DISTRICT JUDGE